[Civ. No. 30591. Fourth Dist., Div. Three. Dec. 30, 1983.]

THOMAS L. HALL et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
IMPERIAL PETROLEUM, INC., et al., Real Parties in Interest.

**COUNSEL**

Schumacher & Evans, Wenke, Taylor, Evans & Ikola and Richard A. Derevan for Petitioners.

Larry W. Krieg and William R. Bickford as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Buchalter, Nemer, Fields, Chrystie & Younger and Frank A. Conner for Real Parties in Interest.

**OPINION**

**CROSBY, Acting P. J.**—In this case of first impression, we consider whether a choice of forum provision in a private California securities agreement is enforceable. Because the choice of law provision in the same agreement violates the Corporations Code and the public policy of this state, we hold enforcement of the choice of forum provision is unreasonable.

I

Thomas L. Hall and Lloyd C. Howard are California residents and officers of Thomas L. Hall Corporation, a California corporation. Imperial Petroleum, Inc. is apparently a Utah corporation.[1] In 1981 Imperial's prin-

---

[1] At oral argument counsel for real parties in interest claimed Imperial is a Nevada corporation, and the 1981 agreement which is the subject of the first three causes of action identifies Imperial as a Nevada corporation. But these representations are inconsistent with the corporation's president's 1982 declaration, which alleges Imperial is a Utah corporation. One of the 1979 partnership agreements, which is a subject of the fourth through eighth causes of action, also identifies Imperial as a Utah corporation.

cipal place of business was Laguna Hills, California; its principal officers and shareholders, Lloyd T. Rochford and Virden L. Parker, were California residents.

Hall and Howard were limited partners and Imperial the general partner in two California oil and gas limited partnerships. The 1979 agreement for one limited partnership is part of the record before us; it provides for the application of California law to settle any dispute arising out of the partnership.

In June and July 1981, the parties discussed exchanging the interests of Hall and Howard in one of the limited partnerships for 100,000 restricted shares of Imperial common stock. These discussions occurred in Imperial's California corporate headquarters and culminated in an oral agreement to proceed with the transaction. On August 13, 1981, Howard met Rochford and Parker at McCarran Airport in Las Vegas, Nevada. Once there, Rochford and Parker offered Howard an additional 50,000 shares of Imperial stock for the interest of Hall and Howard in the second limited partnership. This offer was conveyed by telephone to Hall in California and accepted.

Howard executed the exchange agreement on behalf of himself, Hall, and Thomas L. Hall Corporation at the airport and immediately returned to Southern California. The agreement included the following provisions: "[4(h)](7) Purchasers represent that no offer to sell the securities of Issuer was made in any state other than Nevada and that no substantial or serious negotiations regarding this investment were conducted other than in Nevada and this investment was made, contracted for, and delivered in Nevada. [¶] . . . [5](f) This Agreement shall be deemed to have been made in and shall be governed by and enforced in accordance with the laws of the State of Nevada, and any litigation regarding the Agreement may only be brought in the State of Nevada." Over the next several weeks formal assignments by Hall and Howard of their interests in the limited partnerships were drafted and executed and the stock certificates physically delivered to Hall and Howard in California.

Hall, Howard, and Thomas L. Hall Corporation filed suit against Imperial, Rochford, and Parker in August 1982. They allege violations of California's Corporations Code in the first three causes of action and seek rescission of the stock transaction, restitution of their interest in the limited partnerships, and reimbursement of partnership income. The remaining five causes of action pertain to defendants' alleged fraud in handling the limited partnerships. In those counts plaintiffs seek a partnership accounting and general and punitive damages for fraudulent misrepresentation, breach of fiduciary duty, and conspiracy.

Defendants did not demur to the complaint or raise any affirmative defenses in the answers but subsequently moved for dismissal or a stay of any California litigation based on the forum selection *and choice of law* provisions in the exchange agreement. In opposition to the motion Hall and Howard submitted declarations asserting all negotiations for the proposed transaction occurred in California and Howard traveled to the Las Vegas airport solely to sign the agreement. These statements conflict with the recitations in paragraph 4(h)(7) of the agreement, but Rochford's declaration does not contradict plaintiffs or affirm that paragraph. The trial court stayed proceedings as to all defendants on all causes of actions, including the five alleging defendants' tortious conduct in fraudulently handling the limited partnerships; and plaintiffs brought this proceeding in mandate. (*Diowchi v. Superior Court* (1963) 216 Cal.App.2d 525, 528 [31 Cal.Rptr. 214]; Code Civ. Proc., § 904.1.)

## II

The petition is easily resolved as to the five causes of action arising out of the 1979 limited partnership agreements. The forum selection provision of the 1981 agreement has no application to the 1979 agreements. They contain no forum selection clause and are expressly governed by California law. There is nothing in the 1981 agreement to suggest plaintiffs were then negotiating away or waiving the existing right to settle partnership issues under California law in a California forum. And the contention by real parties in interest that conduct occurring in 1979 through 1981 nevertheless "arises out of" the August 1981 agreement, and thus falls within the forum selection clause, is wholly without support on this record. Consequently, the court erred in staying California proceedings as to the fourth through eighth causes of action.

## III

The issue presented by the first three causes of action alleging defendants made fraudulent misrepresentations and sold unregistered securities requires considerably more analysis, however. ■ Real parties in interest argue the sole issue before us is whether the forum selection clause is "reasonable" under the standards established in *Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491 [131 Cal.Rptr. 374, 551 P.2d 1206]; they assert the choice of law issue is severable and premature. We disagree with both contentions.

In enforcing the forum selection clause, the trial court relied on *Smith, Valentino*. There, the plaintiff California corporation and managing general agent for defendant, a Pennsylvania life insurance corporation, brought a

breach of contract and tort action in California despite a reciprocal forum selection clause which permitted it to sue only in Pennsylvania. The Supreme Court rejected the common law view disfavoring forum selection clauses and held the alleged inconvenience and expense of litigation in Pennsylvania did not render the provision before it unenforceable: "we conclude that forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement . . . would be unreasonable." (*Id.*, at p. 496.) The court held mere inconvenience and additional expense do not make a negotiated and voluntary choice of forum unreasonable (*ibid.*), and tort causes of action arising out of the contractual relationship should also be subject to the clause. (*Id.*, at p. 497.)

In this case, balancing only the factors of inconvenience and expense against "the parties' free and voluntary choice of a different forum . . ." (*id.*, at p. 495), the agreement to bring all litigation in Nevada is not unreasonable in our view, especially since the agreement was executed in that state. But the analysis cannot end there. The Supreme Court in *Smith, Valentino* did not give blanket approval to forum selection clauses; the holding was limited to cases where "[n]o satisfying reason of public policy has been suggested . . ." to deny enforcement of the forum selection clause. (*Ibid.*) The court specifically advised the result might very well be different in cases which "rest upon policy considerations not involved in [*Smith, Valentino*]" (*id.*, at p. 496), and Justice Mosk's dissent argued there were policy reasons to deny enforcement of the provision.

The trial court here found Nevada to be a reasonable forum under *Smith, Valentino*, apparently without reaching the policy issues of protection of securities investors and potential evasion of the Corporate Securities Law of 1968.[2] In our view, contrary to the position of real parties in interest, these considerations are inextricably bound up in the question of the validity of the choice of law provision; and a determination as to the validity of the choice of law provision is prerequisite to a determination of whether the forum selection clause should be enforced. Contrary to our concurring colleague's position, the choice of law question was discussed extensively before the trial court and was obviously considered in the ultimate decision.

IV

■ While "California does not have any public policy against a choice of law provision, where it is otherwise appropriate" (*Gamer* v. *DuPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280, 286 [135 Cal.Rptr. 230])

---

[2]Corporations Code section 25000 et seq. All statutory references are to the California Corporations Code unless otherwise noted.

and "choice of law provisions are usually respected by California courts . . . " (*Smith, Valentino & Smith, Inc.* v. *Superior Court, supra,* 17 Cal.3d at p. 494), "an agreement designating [a foreign] law will not be given effect if it would violate a strong California public policy . . . [or] 'result in an evasion of . . . a statute of the forum protecting its citizens.' " (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1971) 20 Cal.App.3d 668, 673 [97 Cal.Rptr. 811].)

California's policy is to protect the public from fraud and deception in securities transactions. The Corporate Securities Law of 1968 was enacted to effectuate this policy by regulating securities transactions in California and providing statutory remedies for violations of the Corporations Code, in addition to those available under common law. The cornerstone of the law is section 25701, which provides, "Any condition, stipulation or provision purporting to bind any person acquiring any security to waive compliance with any provision of this law . . . is void." Section 25701 applies where there is an offer to sell or buy securities in California. The facts before us (i.e., the negotiations in Laguna Hills and the interstate telephone call to California) support the notion that an offer to sell or buy a security was made in this state (§§ 25008, subds. (a) and (b)[3] and 25017[4]), and the parties may not waive or evade the application of California law to the transaction by private agreement. As one authoritative treatise aptly observes, "Section 25017, which includes any attempt to dispose of, or solicitation of an offer to buy, a security, was intended to and will preclude any evasion of the qualification requirements of the statute by transporting the parties across the State border. Any discussions regarding the proposed transaction which have progressed to the point where the parties are ready

---

[3]Section 25008, subdivisions (a) and (b) provide, "(a) An offer or sale of a security is made in this state when an offer to sell is made in this state, or an offer to buy is accepted in this state, or (if both the seller and the purchaser are domiciled in this state) the security is delivered to the purchaser in this state. An offer to buy or a purchase of a security is made in this state when an offer to buy is made in this state, or an offer to sell is accepted in this state, or (if both the seller and the purchaser are domiciled in this state) the security is delivered to the purchaser in this state. [¶] (b) An offer to sell or to buy is made in this state when the offer either originates from this state or is directed by the offeror to this state and received at the place to which it is directed. An offer to buy or to sell is accepted in this state when acceptance is communicated to the offeror in this state; and acceptance is communicated to the offeror in this state when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received at the place to which it is directed. A security is delivered to the purchaser in this state when the certificate or other evidence of the security is directed to the purchaser in this state and received at the place to which it is directed."

[4]Section 25017 provides in part, "(a) 'Sale' or 'sell' includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value. 'Sale' or 'sell' includes any exchange of securities and any change in the rights, preferences, privileges, or restrictions of or on outstanding securities. [¶] (b) 'Offer' or 'offer to sell' includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value."

to travel to Reno or Las Vegas for the purpose of consummating the transaction will almost inevitably have involved an offer *in this State.*" (1 Marsh & Volk, Practice Under the Cal. Securities Laws, § 308[4][a], pp. 3-20, 3-20.1.) On the current record this language is an accurate description of the present case.

California's policy to protect securities investors, without more, would probably justify denial of enforcement of the choice of forum provision, although a failure to do so might not constitute an abuse of discretion; but section 25701, which renders void any provision purporting to waive or evade the Corporate Securities Law, removes that discretion and compels denial of enforcement.

Although section 25701 was enacted in 1968, its parameters have not yet been explored in a published appellate opinion. However, the United States Supreme Court held a similar nonwaiver provision, section 14 of the federal Securities Act (15 U.S.C. § 77n),[5] prohibits enforcement of agreements to arbitrate contained in securities transactions. (*Wilko* v. *Swan* (1953) 346 U.S. 427, 434-435 [98 L.Ed. 168, 175, 74 S.Ct. 182].) In discussing the likelihood arbitrators would not properly interpret federal law, the Supreme Court noted securities cases typically require "subjective findings on the purpose and knowledge of an alleged violator of the Act. [The findings] must be not only determined but applied by the arbitrators without judicial instruction on the law [whose] award may be made without explanation of their reasons and without a complete record. . . ." (*Id.,* at pp. 435-436 [98 L.Ed. at p. 176].) Because arbitrators' errors in interpreting federal law were not subject to judicial review in the federal courts (*id.,* at pp. 436-437 [98 L.Ed. at p. 176]), the court concluded agreements to arbitrate securities disputes are unenforceable as violative of the nonwaiver provision.

Similarly, we believe the right of a buyer of securities in California to have California law and its concomitant nuances apply to any future dispute arising out of the transaction is a "provision" within the meaning of section 25701 which cannot be waived or evaded by stipulation of the parties to a securities transaction. Consequently, we hold the choice of Nevada law provision in this agreement violates section 25701 and the public policy of this state (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 20 Cal.App.3d 668, 673) and for that reason deny enforcement of the forum selection clause as unreasonable.

Real parties in interest seek to avoid the inevitable by arguing, "Nothing prevents any Nevada court from enforcing California law where it is appli-

---

[5]Section 14 then read: "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void."

cable." At oral argument, however, counsel for real parties in interest rejected the notion of a stipulation to the application of California law in the Nevada forum. We have found no reported decision discussing an agreement to litigate future disputes arising out of a California securities transaction according to California law in another forum, but we are not called upon to decide that question.

Moreover, we find this belated argument by real parties in interest particularly disingenuous, as it is in sharp contrast with the position they advanced before the trial court, where they persistently urged the application of Nevada law. They claimed, for example, "In this action, where a central thrust . . . appears to be a statutory recission [*sic*] of the contract based upon California securities laws, the choice of law may be critical to the outcome of the action. The parties, both sophisticated investors, agreed that the contract was negotiated and entered into in the State of Nevada and that it would be governed under the laws of the State of Nevada, but now seek to renig [*sic*] upon that agreement. The courts of the State of Nevada, of course, would be much more competent to apply the law of Nevada than would California courts which have no expertise in such statutes and authority. [¶] The law is clearly that forum selection clauses and choice of law clauses will be enforced by the California courts."

We also note Nevada has enacted a nonwaiver provision similar to that of California and applicable to transactions subject to its securities laws (Nev. Rev. Stat., ch. 90, § 90.200, subd. 7). A court in that state might well apply Nevada law in the face of a California choice of law provision or stipulation.

The alternative writ is discharged. Let a peremptory writ of mandate issue directing the superior court to vacate its stay order and enter a new order denying the motions of real parties in interest in their entirety.

Sonenshine, J., concurred.

**WALLIN, J.,** Concurring.—The only issue before this court is whether a forum selection clause appearing in a contract freely and voluntarily negotiated at arm's length is enforceable. I would hold the forum selection clause in this case unenforceable but would do so on different grounds than those relied upon by the majority.[1]

---

[1] I agree with the majority's view on the five causes of action arising out of the 1979 limited partnership agreements.

I

"Forum-selection clauses have historically not been favored by American courts." (*The Bremen* v. *Zapata Off-Shore Co.* (1972) 407 U.S. 1, 9 [32 L.Ed.2d 513, 520, 92 S.Ct. 1907].) In the past they were held invalid as an attempt to "oust" the jurisdiction of the court by preventing it from hearing a case otherwise within its jurisdiction. (*General Acceptance Corp.* v. *Robinson* (1929) 207 Cal. 285, 289 [277 P. 1039]; *Beirut Universal Bank* v. *Superior Court* (1969) 268 Cal.App.2d 832, 843 [74 Cal.Rptr. 333]; *General Motors Accept. Corp.* v. *Codiga* (1923) 62 Cal.App. 117 [216 P. 383].) But in *Smith, Valentino & Smith* our Supreme Court had occasion to reconsider the general rule of invalidity in light of "the modern trend which favors enforceability of such forum selection clauses." (*Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 495 [131 Cal.Rptr. 374, 551 P.2d 1206].)

In *Smith, Valentino & Smith* the plaintiff reiterated the argument forum selection clauses were void per se as violative of California's declared public policy that parties may not deprive courts of their jurisdiction by private agreement. The court stated: "[I]t is readily apparent that courts possess discretion to *decline* to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum. Moreover, although we have acknowledged a policy favoring access to California courts by resident plaintiffs [citation], we likewise conclude that the policy is satisfied in those cases where, as here, a plaintiff has freely and voluntarily negotiated away his right to a California forum . . . ." (*Smith, Valentino & Smith, supra,* 17 Cal.3d at p. 495.)

The court then announced a new rule regarding enforceability of forum selection clauses in this state. "For the foregoing reasons we conclude that forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith, Valentino & Smith, supra,* 17 Cal.3d at p. 496.) Thus, the sole touchstone of forum selection clause enforceability under *Smith, Valentino & Smith* is reasonableness. Reasonableness is to be determined on a case by case basis in light of all of the facts and circumstances.

A close comparison of the facts of *Smith, Valentino & Smith* with the facts of this case persuades me enforcement here would be unreasonable. *Smith, Valentino & Smith* involved a California corporation whose principal place of business was in California and a Pennsylvania corporation whose principal place of business was in Pennsylvania. The contract between the parties contained a reciprocal forum selection clause requiring all disputes

to be litigated in the home forum of the defending party. The California corporation had agreed to bring suit against the Pennsylvania corporation in Pennsylvania and vice versa. Either designated forum was convenient for one party and inconvenient for the other. Pennsylvania was convenient for the Pennsylvania corporation because all of its officers and witnesses were there, and inconvenient for the California corporation because all of its officers and witnesses were in California. On the other hand, a California forum was just as inconvenient for the Pennsylvania corporation. Under these facts inconvenience or additional expense to the plaintiff did not render the clause unenforceable because "such matters are inherent in a reciprocal clause of this type." (*Smith, Valentino & Smith, supra,* 17 Cal.3d at p. 496.) Therefore, the court held it was not unreasonable to hold the California plaintiff to its promise to bring suit in Pennsylvania.

In this case the individual plaintiffs are California residents and the corporate plaintiff is a California corporation with its principal place of business in California. The individual defendants are California residents and the corporate defendant, while nominally a Utah corporation (see fn. 1), had its principal place of business in California. In short, all of the relevant parties and witnesses here have the same home forum, California. Furthermore, all material aspects of the transaction from preliminary negotiation to completion took place in California, except that formal execution took place during a brief meeting at the Las Vegas airport. On that occasion plaintiff's representative flew to Las Vegas from California and never even left the airport before returning to California.

The forum selection clause here is not reciprocal in the *Smith, Valentino & Smith* sense because the designated forum is not the home forum of any party. Nevada is not a convenient forum for any party. None of the parties or witnesses are there. Under these facts a Nevada forum makes no sense. The only purpose which I can discern from this record for choosing a Nevada forum is an attempt to avoid a California forum and possible application of California law. Therefore, enforcement of the forum selection clause here is unreasonable and constitutes an abuse of discretion. (*Smith, Valentino & Smith, supra,* 17 Cal.3d 494.)

## II

There is no reason to discuss the validity of the choice of law provision or any public policy embodied in California corporate securities law in order to decide the choice of forum issue. Contrary to the majority's assertion the holding in *Smith, Valentino & Smith* is not limited to cases where no satisfying reason of public policy is suggested to deny enforcement of a forum selection clause. The full sentence partially quoted by the majority reads:

"No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length." (*Smith, Valentino & Smith, supra,* 17 Cal.3d at pp. 495-496.) In other words, there is no public policy which bars enforcement of reasonable forum selection clauses in nonadhesion contracts.

Furthermore, the court in *Smith, Valentino & Smith* did not specifically advise the result might very well be different in cases which rest upon policy considerations not involved in that case, as the majority here contends. The full sentence partially quoted by the majority reads: "While *General Acceptance Corp.* v. *Robinson, supra,* 207 Cal. 285, is factually distinguishable and, accordingly, may be said to rest upon policy considerations not involved in the present action, nevertheless to the extent that the rationale of *General Acceptance* is inconsistent with our opinion, we decline to follow it." (*Smith, Valentino & Smith, supra,* 17 Cal.3d at p. 496.) The court is simply saying to the extent the old rule of *General Acceptance* is inconsistent with the new rule of *Smith, Valentino & Smith,* the old rule is disavowed.

Thus, nothing in *Smith, Valentino & Smith* suggests the enforceability of a forum selection clause turns on public policy related to the substantive claims in the underlying action. Nevertheless, the majority holds the forum selection clause here unenforceable because the underlying action alleges violations of California securities law. They confuse the choice of forum issue with the choice of law issue and conclude the public policy and statute against waiving the protections of California securities law somehow invalidates the choice of forum provision. The result is a per se rule of invalidity in every case involving alleged violations of California securities law. There is no authority for this novel approach and I believe it is unwise.

### III

The validity of the choice of law provision is not before us. The parties have not raised, briefed or argued the issue either here or in the trial court.[2] Thus, the trial court has not yet considered or ruled on it. Nevertheless, the majority holds the choice of law provision invalid. I believe we should decide only the choice of forum issue at this time and give the trial court a chance to decide the choice of law issue.

A basic tenet of American jurisprudence is appellate courts will not consider or decide questions of law until they are properly presented. Accord-

---

[2]Defendants did note the existence of the choice of law provision as one reason why the trial court should enforce the choice of forum provision.

ingly, although I agree with the result reached by the majority because it would be unreasonable to enforce the choice of forum clause, my concept of judicial restraint precludes me from considering the separate choice of law issue until it is before us.