[No. D004050. Fourth Dist., Div. One. Mar. 19, 1987.]

MENCOR ENTERPRISES, INC., et al., Plaintiffs and Appellants, v. HETS EQUITIES CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Neil G. Strachan for Plaintiffs and Appellants.

Styn & Garland, Ronald L. Styn and Tawn H. Skousen for Defendants and Respondents.

## OPINION

**BUTLER, J.**—This appeal concerns applicability as a matter of law of the choice of law by parties to a contract. A California borrower sued its Colorado lender for treble the amount of interest paid on a promissory note, claiming the 44 percent rate was usurious. The note provided for application of Colorado law which permits an interest rate not to exceed 45 percent. The court sustained the lender's demurrer to the complaint for usury without leave to amend, holding as a matter of law the Colorado 44 percent rate selected by the parties did not constitute usury entitling the California borrower to sue for damages under California usury law. We shall conclude the applicability of Colorado law in the circumstances presented involves factual determinations, and reverse.

I

The demurrer admits the well-pleaded allegations of the complaint. We recite those allegations as our factual statement.

Mencor Enterprises, Inc., a California corporation, signed as maker a promissory note for and received $140,000. Hets Equities Corporation, a Colorado corporation, was the lender. The note called for 44 percent interest,[1] principal and interest payable in Colorado or at any address as designated by the holder of the note. Principal and interest were payable in monthly installments of $2,500 commencing October 1, 1982. Unpaid interest and principal were payable August 1, 1984. The note included the following: "This is a Colorado Note executed and funded in the State of Colorado to Holder, a Colorado corporation. As to all matters concerning this Note, suit may be brought in a Colorado court and the laws of the State of Colorado shall apply." The note permitted Mencor to execute supplemental promissory notes the beginning of each quarter covering unpaid interest for the preceding quarter. These notes likewise have a 44 percent interest rate and were payable with the principal note August 1, 1984. Mencor signed and delivered four supplemental notes, one for each of the four quarters following execution of the principal note, all of which showed Denver, Colorado in

---

[1]Colorado Revised Statute 5-12-103 (1984 supp.) provides: "Greater rate may be stipulated. (1) The parties to any bond, bill, promissory note, or other instrument of writing may stipulate therein for the payment of a greater or higher rate of interest than eight percent per annum, but not exceeding forty-five percent per annum, and any such stipulation may be enforced in any court of competent jurisdiction in the state, except as otherwise provided in articles 1 to 6 of this title. The rate of interest shall be deemed to be excessive of the limit under this section only if it could have been determined at the time of the stipulation by mathematical computation that such rate would exceed an annual rate of forty-five percent when the rate of interest was calculated on the unpaid balances of the debt on the assumption that the debt is to be paid according to its terms and will not be paid before the end of the agreed term."

the upper right hand corner. The first two supplemental notes included this paragraph: "This is a Colorado Note executed and funded in the State of Colorado to Holder, a Colorado corporation. As to all matters concerning this Note, suit may be brought in a Colorado court and the laws of the State of Colorado shall apply." The last two supplemental notes had this paragraph: "This is a Colorado Note supplementing Maker's Note of August 27, 1982 which earlier Note was executed and funded in the State of Colorado to Holder, a Colorado corporation. As to all matters concerning this Note, suit may be brought in a Coloardo [*sic*] court and the laws of the State of Colorado shall apply."

Mencor[2] made eight monthly payments of $2,500, skipped three months, made a principal payment of $50,194.11, skipped another month, and then made three more payments of $1,700, $1,692.35 and $1,692.35, the last on February 1, 1984. After a demurrer was sustained to Mencor's first complaint for usury filed June 21, 1984, Mencor filed a first amended complaint for usury. The demurrer to that complaint was sustained without leave to amend. Mencor appeals the judgment dismissing the complaint and awarding attorney fees to Hets.

## II

The parties to a contract may specify the law to be followed in matters concerning the contract and a California court will apply the law so selected if enforcement of the contract does not result in an evasion of settled public policy or California law protective of the rights of its citizens. (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1971) 20 Cal.App.3d 668, 673 [97 Cal.Rptr. 811].) *Frame* concerned a controversy between a brokerage firm and a former employee as to forfeiture of profit-sharing benefits under a plan which provided the rights of the parties would be governed by New York law. The forfeiture was valid under that law. The court declined to follow New York law. "We recognize that the choice-of-law question is not foreclosed by the existence of an applicable California statute where New York State has substantial contacts with the transaction and the parties, if no attempt to evade California law appears. But an agreement designating applicable law will not be given effect if it would violate a strong California public policy. [Citations.] Here Business and Professions Code section 16600 explicitly declares that 'every contract by which anyone is restrained from

---

[2]Mencor is the trustee of the Mesa Trust. The complaint includes other plaintiffs. Kelleum F. Childers is the beneficiary of the trust. K.C. Limited is a California partnership whose general partners are Mencor and Childers. The complaint alleges "plaintiffs" executed and delivered the notes and made payments on the original note. While these other plaintiffs did not sign any of the notes, we shall refer to Mencor as including these plaintiffs even though their standing to sue seems doubtful.

engaging in a lawful profession, trade, or business of any kind is to that extent void.' The California Supreme Court in *Muggill* v. *Reuben H. Donnelley Corp.* [1965] 62 Cal.2d 239, at page 242 [42 Cal.Rptr. 107, 398 P.2d 147], has on closely similar facts held a forfeiture provision to be invalid. We conclude from the California Supreme Court's treatment of the problem that section 16600 does represent a 'strong public policy' of this state. Therefore the agreement for application of New York law must not be allowed to defeat that policy." (*Frame, supra,* at p. 673.)

We considered validity of a choice-of-law provision and claim of usury in *Gamer* v. *duPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280 [135 Cal.Rptr. 230]. A customer of a brokerage firm claimed interest rates charged on margin accounts were usurious under California law. The margin account agreement made New York law applicable. That law permitted an interest rate higher than California's rate. The trial court followed the New York law and granted the broker's motion for summary judgment. We affirmed and referred to rules in Restatement Second of Conflict of Laws[3] to support our conclusion California's policy against usury was not offended and New York law was applicable.

The analysis of conflicts law in 1 Witkin, Summary of California Law (8th ed. 1973) Contracts, sections 55-87, pages 64-92, follows that of the Second Restatement for a number of reasons, including "California usually follows the Restatement in every substantive field." (Witkin, *supra,* at p. 67.) Here, the trial court concluded *Gamer* was controlling as a matter of law. We disagree. In *Gamer,* the choice-of-law issue was determined on a motion for summary judgment. The trial court made findings of fact based on declarations and we employed those factual findings in our analysis and conclusions. As *Gamer* is distinguishable, we turn to Restatement rules as the beginning of analysis of the issue presented here. Section 203 addresses usury and choice of law: "The validity of a contract will be sustained against the charge of usury if it provides for a rate of interest that is permissible in a state to which the contract has a substantial relationship and is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law under the rule of § 188." (At p. 649.)

Two determinations must be made under section 203. First, the relationship of the state of chosen law to the contract, second, the difference between the rates of interest of the forum and the chosen law state.

We pass for the moment those issues. Section 203 by its reference to

---

[3]All section and restatement references are to the Restatement Second of Conflict of Laws, unless otherwise specified.

section 188, Law Governing in Absence of Effective Choice by the Parties,[4] applies to determination of governing law concerning usury as to contracts where the parties have not made an effective choice of law.

Comments to the section support the view section 203 is applicable where the parties have not agreed upon a choice of law and a court is required to determine applicable law. The rationale of section 203 is: "A prime objective of both choice of law (see § 6) and of contract law is to protect the justified expectations of the parties. Subject only to rare exceptions, the parties will expect on entering a contract that the provisions of the contract will be binding upon them. For this reason, the courts will not apply an invalidating rule to strike down the contract unless the value of protecting the justified expectations of the parties is outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied. Usury is a field where this policy of validation is particularly apparent." (At p. 650.) Other comments bear on the phrase "substantial relationship" if a contract refers to two or more states. Thus, a state must have a normal and rational relationship to the contract and the parties. "The required relationship is unlikely to be based solely upon contacts purposely located in the state by the parties in an attempt to gain the benefit of that state's usury statute" (com. *c* to § 203, at p. 651). The determination of substantial relationship includes consideration of the domicile state of the borrower, the state where the loan is to be repaid provided that state bears a normal and natural relationship to the contract, the state where the loan was made or negotiated and the place of business of the lender (*id.* at pp. 651-652). Comment *e* to section 203 notes: "*Choice of law by the parties.* A choice of law by the parties will not secure application of a law that would not otherwise be applicable to sustain a contract against the charge of usury. This is primarily because of the liberality of the present rule. Under it, the forum will examine the general usury statutes of all states which have a substantial relationship to the contract and apply the statute which either sustains the contract in full or else imposes the lightest penalty for usury. The parties will not be permitted, by means of a choice-of-law provision, to obtain still more favorable treatment for the contract by application of the local law of a state which has no substantial relationship to the contract. Usury laws are designed to protect a person against the oppressive use of superior bargaining power and thus represent an important policy of the enacting state (compare § 187, Comment *g*). They would largely be deprived of efficacy if the parties could effectively choose to be governed as to usury by the local law of a state which has no substantial relationship to the contract." (At pp. 653-654.)

---

[4]Comment *a* to section 188 states: "*Scope of section.* The rule of this Section applies in all situations where there has not been an effective choice of the applicable law by the parties (see § 187)." (At p. 575.)

We now turn to section 187, Law of the State Chosen by the Parties.[5]

Comment a states the rule of section 187 is applicable when the court is satisfied the parties have chosen the state of applicable law. While Mencor asserts ambiguity in the choice-of-law provision, for purposes of our analysis we shall assume the parties selected Colorado law. Subdivision (1) provides the law of the state chosen by the parties, here Colorado, will be applied if "the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Comment c to section 187 explains this subsection (1): "The rule of this Subsection is a rule providing for incorporation by reference and is not a rule of choice of law. The parties, generally speaking, have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. In such instances, the forum will apply the applicable provisions of the law of the designated state in order to effectuate the intentions of the parties. So much has never been doubted. The point deserves emphasis nevertheless because most rules of contract law are designed to fill gaps in a contract which the parties could themselves have filled with express provisions. This is generally true, for example, of rules relating to construction, to conditions precedent and subsequent, to sufficiency of performance and to excuse for nonperformance, including questions of frustration and impossibility. As to all such matters, the forum will apply the provisions of the chosen law.

"Whether the parties could have determined a particular issue by explicit agreement directed to that issue is a question to be determined by the local law of the state selected by application of the rule of § 188. Usually, however, this will be a question that would be decided the same way by the relevant local law rules of all the potentially interested states. On such occasions, there is no need for the forum to determine the state of the applicable law." (At pp. 563-564.) ■ Illustrations appended to comment c demonstrate that whether the Colorado 44 percent interest rate, applicable to the principal

---

[5]"§ 187. Law of the State Chosen by the Parties [¶] (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue. [¶] (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. [¶] (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law." (At p. 561.)

of the promissory notes here, will be validated by a California court to defeat a claim of usury depends on the relationship of Colorado to the parties and the contract. The Colorado rate as pleaded in the complaint would be usurious in California.[6] Under California law, the parties lack power to incorporate Colorado's 44 percent interest rate absent a determination that Colorado, the state of the chosen law, has a relationship to the parties or the contract.[7] Subdivision (1) is not self-executing, i.e., while the parties may specifically incorporate Colorado's 44 percent interest rate in their contract, that rate will be applied only if Colorado has a relationship to the parties or the contract. This is a factual issue not reached by the general demurrer to the pleadings here.

Subdivision (2) of section 187 applies "when it is sought to have the chosen law determine issues which the parties could not have determined by explicit agreement directed to the particular issue." (Com. *d* to § 187, at p. 564.) "Examples of such questions are those involving capacity, formalities and substantial validity. A person cannot vest himself with contractual capacity by stating in the contract that he has such capacity. He cannot dispense with formal requirements, such as that of a writing, by agreeing with the other party that the contract shall be binding without them. Nor can he by a similar device avoid issues of substantial validity, such as whether the contract is illegal. Usually, however, the local law of the state chosen by the parties will be applied to regulate matters of this sort. And it will usually be applied even when to do so would require disregard of some local provision of the state which would otherwise be the state of the applicable law.

"Permitting the parties in the usual case to choose the applicable law is not, of course, tantamount to giving them complete freedom to contract as they will. Their power to choose the applicable law is subject to the two qualifications set forth in this Subsection (see Comments *f-g*)." (Com. *d* to § 187, at pp. 564-565.) The first qualification to the right of the parties to choose applicable law requires that the parties have a reasonable basis for choosing

---

[6]The complaint alleges and the demurrer admits the Colorado 44 percent rate of interest is usurious under California law. Accordingly, we do not inquire into the allowable rates permitted for various transactions and the lenders enumerated under California Constitution article XV, Usury.

[7]Illustrations to comment *c,* section 187, state: "4. In State X, A establishes a trust and provides that B, the trustee, shall be paid commissions at the highest rate permissible under the local law of state Y. A and B are both domiciled in X, and the trust has no relation to any state but X. In X, the highest permissible rate of commissions for trustees is 5 per cent. In Y, the highest permissible rate is 4 per cent. The choice-of-law provision will be given effect, and B will be held entitled to commissions at the rate of 4 per cent. [¶] 5. Same facts as in Illustration 4 except that the highest permissible rate of commissions in X is 4 per cent and in Y is 5 per cent. Effect will not be given to the choice-of-law provision since under X local law the parties lacked power to provide for a rate of commissions in excess of 4 per cent and Y, the state of the chosen law, has no relation to the parties or the trust." (At p. 564.)

the law. When the state of the chosen law has some substantial relationship to the parties or their contract, the parties have a reasonable basis for the choice (com. *f* to § 187). The second qualification concerns fundamental policy of the forum state, here California, in the determination of the issue. "The forum will apply its own legal principles in determining whether a given policy is a fundamental one within the meaning of the present rule and whether the other state has a materially greater interest than the state of the chosen law in the determination of the particular issue. The parties' power to choose the applicable law is subject to least restriction in situations where the significant contacts are so widely dispersed that determination of the state of the applicable law without regard to the parties' choice would present real difficulties." (Com. *g* to § 187, at p. 568.)

In *Gamer,* we remarked on California's public policy against usury: "California has a strong public policy against usury, that is, the charging and receiving interest on the loan or forbearance of money in excess of the rate allowed by law. It has no strong public policy against a particular rate of interest so long as the charging of that rate is permitted by law to the specific lender." (*Gamer* v. *duPont Glore Forgan, Inc., supra,* 65 Cal.App.3d 280 at p. 287.) To save the sense of this excerpt, we read the last sentence as a restatement of usury, i.e., if the note offends the law, the transaction is usurious and violates California's strong public policy on usury.[8]

However, *Ury* v. *Jewelers Acceptance Corp.* (1964) 227 Cal.App.2d 11 [38 Cal.Rptr. 376], concluded California does not have a strong public policy against enforcing contracts valid under chosen law but usurious under California law because the constitutional prohibitions against usury (then art. XX, § 22) exempt various classes of lenders and proscribe varying rates. *Ury* affirmed a judgment declaring New York law applicable to a contract calling for interest on accounts receivable at a rate usurious in California. *Ury* and *Gamer* did not consider applicability of chosen law in the factual vacuum of a demurrer to a complaint. Evidence before the trial courts and findings on that evidence before the courts of appeal supported inquiry into the domiciliary status of the parties, the relationship of the state of the chosen law to the parties and the contract, the public policy of the forum state, and the other factors we have noted.

■ Our analysis of choice-of-law concepts leads to an inevitable conclusion. The specific incorporation of Colorado's 44 percent interest rate, which is usurious under California law, into the contract of the parties here does not as a matter of law validate the contract and immunize the parties to it from the rights and the penalties imposed by California law on parties to

---

[8]With all deference to our brethren, the remark is inscrutable.

usurious transactions. As we have seen, the parties' choice of Colorado law will be permitted in a California forum only upon the examination of the reasonable relationship of the contract to Colorado, the substantial contacts of the parties with Colorado and consideration of California's fundamental policy with respect to usury. These are issues of fact requiring evidentiary hearings.

Judgment reversed.

Kremer, P. J., and Work, J., concurred.