[No. A083600. First Dist., Div. Three. July 27, 1999.]

BERCLAIN AMERICA LATINA, S.A. de C.V., et al., Plaintiffs and Appellants, v.
BAAN COMPANY N.V., et al., Defendants and Respondents.

**COUNSEL**

Townsend and Townsend and Crew, Eugene Crew, Mark T. Jansen, Laura A. Peter and Erin E. Giacoppo for Plaintiffs and Appellants.

Wilson, Sonsini, Goodrich & Rosati, Peter P. Chen, Daniel W. Turbow and R. Craig Gordon for Defendants and Respondents.

**OPINION**

**WALKER, J.**—Appellants Berclain America Latina, S.A. de C.V., (BAL) and BBR Software e Consultoria (BBR) appeal the trial court's dismissal of their action against respondents Baan Company and Amal Johnson (Baan). The court dismissed the action based upon its finding that due to a contractual forum selection clause, jurisdiction for the action rests in Quebec, Canada. We hold that Baan, which was not a party to the agreement containing the forum selection clause, had no standing to assert the clause where it made no showing that it was either an intended third party beneficiary to the agreement or so closely involved in the agreement or associated with a party to the transaction as to be functionally equivalent to that party. In fact, the evidence showed that Baan had absolutely no relationship with any party at the time the agreement containing the forum selection clause was signed, and had no involvement in any transaction surrounding the signing of the agreement. Furthermore, as to appellant BBR, Baan made no showing that BBR ever entered into any agreement with anyone in which it agreed to Quebec as a litigation forum. Absent a showing of standing, Baan's motion to dismiss should have been denied. We reverse.[1]

*Facts*

BAL, a Mexican corporation, is a distributor of computer software. In 1992 BAL entered into an agreement with Berclain Group, Inc. (Berclain), a Canadian computer software manufacturer, which gave BAL the exclusive right to distribute Berclain's software products, including Berclain's primary software product known as "MOOPI," in Latin America. Subsequently, BAL entered into a separate agreement with BBR, a Brazilian software distribution company, giving BBR the exclusive right to distribute Berclain software, including MOOPI, in Brazil. In May 1996, Baan, a Netherlands

---

[1]Because we hold Baan had no standing to assert the forum selection clause, we need not address the trial court's ruling on the related discovery motion.

corporation doing business in California, acquired Berclain pursuant to a stock purchase agreement, such that Berclain became the wholly owned subsidiary of Baan.

In their complaint, BAL and BBR alleged that after purchasing Berclain, Baan tortiously interfered with their exclusive rights to distribute MOOPI software in Latin America, including Brazil. Specifically, they alleged that despite its awareness of the agreements providing exclusive distribution rights to BAL and BBR, Baan induced Berclain to transfer to Baan its worldwide rights to Berclain software, including MOOPI, so that Baan could sell the software throughout the world, including in Latin America and Brazil. They further alleged that Baan first attempted to purchase BAL and BBR's exclusive rights for an unreasonably low price; that when refused Baan threatened to market its own product which was virtually identical to MOOPI, without purchasing the exclusive rights; and that Baan eventually carried through on the threat by aggressively marketing its MOOPI-type software in Latin America at prices substantially below the price for which BAL and BBR could sell MOOPI. In addition, BAL and BBR alleged that Baan engaged in unfair competition and false advertising in violation of Business and Professions Code sections 17200 and 17500.

In response to the complaint, Baan, purporting to make a special appearance, filed a motion to dismiss on the ground that jurisdiction for the action rested exclusively in Quebec, Canada. The basis for the assertion was a forum selection clause contained in the 1992 distribution agreement entered into between BAL and Berclain which stated: "BERCLAIN and BAL hereby consent and agree that jurisdiction and venue for any claim or cause of action arising under or related to this agreement shall be properly and exclusively in the province of Quebec and expressly waive any and all rights which they may have or which may hereafter arise to contest the propriety of such choice of jurisdiction and venue." Relying upon this clause, the trial court granted Baan's motion to dismiss as to both BAL and BBR, notwithstanding the fact that *neither* BBR nor Baan were signatories to any agreement containing the forum selection clause.

### Standard of Review

In order to ascertain the correct standard of review, we must establish that which we are called upon to decide. The threshold issue for our determination is whether Baan had standing to assert the forum selection clause in this action. Because it is undisputed that Baan did not sign the

contract containing the clause, Baan's standing would depend, as we explain more fully below, on its position as an intended third party beneficiary to the contract, or on its position as a "transaction participant." We therefore review the threshold standing question under a substantial evidence standard of review. As we shall explain, we hold that there was no substantial evidence to support the trial court's implicit finding that Baan had standing to assert the forum selection clause.[2] The motion to dismiss should have been denied on this ground, and we need inquire no further into traditional forum convenience questions.

## Discussion

It is elementary that a party asserting a claim must have standing to do so. In asserting a claim based upon a contract, this generally requires the party to be a signatory to the contract, or to be an intended third party beneficiary. (*Eastern Aviation Group, Inc.* v. *Airborne Express, Inc.* (1992) 6 Cal.App.4th 1448, 1452 [8 Cal.Rptr.2d 355]; Civ. Code, § 1559.) Although Baan concedes that it is neither a signatory nor a third party beneficiary to the 1992 exclusive distribution contract between BAL and Berclain, it contends that it may raise the forum selection clause as a defense to the California action because it is "closely related" to Berclain and was a "transaction participant" entitled to assert the clause. Baan's position depends upon a footnote in a federal Ninth Circuit opinion, *Manetti-Farrow, Inc.* v. *Gucci America, Inc.* (9th Cir. 1988) 858 F.2d 509 (*Manetti*) and two California appellate opinions which cite the *Manetti* footnote with approval. The first of the California cases, *Lu* v. *Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490 [14 Cal.Rptr.2d 906] (*Lu*), affirmed the dismissal of an action based upon a contractual forum selection clause. The second, *Bancomer, S. A.* v. *Superior Court* (1996) 44 Cal.App.4th 1450 [52 Cal.Rptr.2d 435] (*Bancomer*), denied a petition for writ of mandate seeking to compel the trial court to dismiss an action because of a forum selection clause. All three cases inform our decision here.

In *Manetti*, the plaintiff and defendant Gucci Parfums entered into an exclusive dealership agreement containing a clause selecting Florence, Italy, as the forum for any litigation. Another defendant, Gucci America, was the sister company to Gucci Parfums which held the American rights to the Gucci trademark. Gucci America separately ratified the dealership agreement between Manetti and Gucci Parfums. The plaintiff brought suit in

---

[2]The trial court made no explicit finding of standing. The finding was implicit in its order granting Baan's motion to dismiss.

federal court in California alleging several torts, including tortious interference with contract, against Gucci Parfums, its parent and sister companies (including Gucci America) and several individual directors. The federal district court dismissed the plaintiff's action based upon the forum selection clause in the contract. The primary issue addressed in *Manetti* was whether the contractual forum selection clause applied to the plaintiff's tort claims. The court held that it did, because the tort claims could not be adjudicated without an analysis of the contract.[3] (*Manetti, supra*, 858 F.2d at p. 514.) To this conclusion, the court added the following footnote: "Manetti-Farrow argues the forum selection clause can only apply to Gucci Parfums, which was the only defendant to sign the contract. However, 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.' [Citations.] We agree with the district court that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants." (*Id.* at p. 514, fn. 5.) Given the absence of any analysis to support the court's conclusion, we can only guess what it meant by "closely related." For help, we look to *Lu* and *Bancomer* which both considered the "test" enunciated in *Manetti*'s footnote.

In *Lu*, the plaintiffs entered into a dry cleaning franchise agreement with Dryclean U.S.A. of California. The agreement contained a forum selection clause designating Florida as the forum to litigate disputes. Dryclean U.S.A. of California's corporate parent was Dryclean U.S.A. Franchise, which maintained its principal place of business in Florida, as did its own corporate parent, Dryclean U.S.A., Inc. The Lus sued all three Dryclean entities in California for rescission and damages, alleging the defendants had misrepresented the advantages of owning a dry cleaning business. The trial court granted the defendants' motion to dismiss the action, on the ground that under the forum selection clause it must be litigated in Florida. On appeal the court affirmed, holding that the clause was not unreasonable, either for lack of connection between the plaintiffs and the selected forum, nor because two of the defendants did not sign the agreement containing the clause. As to the latter issue the court, citing footnote 5 in *Manetti*, held that ". . . the alleged conduct of Dryclean Franchise and Dryclean U.S.A. [the parent and grandparent of Dryclean of California] is closely related to the contractual relationship. They are alleged to have participated in the fraudulent representations which induced plaintiffs to enter into the Agreement. Indeed, plaintiffs go so far as to allege Dryclean Franchise and Dryclean U.S.A. are

---

[3]In its responding brief, Baan initially argues at length that appellants' tort claims against it are subject to the forum selection clause. As we shall see, this argument places the cart before the horse. Before determining which claims are subject to the clause we must determine whether Baan has standing to assert the clause.

the 'alter ego' of Dryclean, California, which did sign the Agreement containing the forum selection clause. Under these circumstances, the fact the Dryclean Franchise and Dryclean, U.S.A. did not sign the Agreement does not render the forum selection clause unenforceable." (*Lu*, *supra*, 11 Cal.App.4th at p. 1494.)

*Bancomer* is also useful for understanding *Manetti*'s "closely related" test. In that case, the court considered whether a bank designated in a purchase agreement as the trustee of certain leasehold property interests in Mexico could assert the forum selection clause contained in the purchase agreement to which it was not a signatory. The plaintiff purchaser brought an action against the bank for intentional and negligent misrepresentation and constructive fraud, claiming that the bank, having knowledge of other litigation affecting the validity of the plaintiff's leasehold interests, misrepresented the validity of the interests to induce her to enter into the purchase agreement. The complaint did not name the parties who had entered into the agreement with the plaintiff, only the bank, which had not. After reviewing *Lu* and *Manetti*, the court rejected the bank's attempt to enforce the forum selection clause because it was neither a third party beneficiary to the purchase agreement, nor was it so closely related to the contractual transaction to claim a benefit from the clause. (*Bancomer*, *supra*, 44 Cal.App.4th at p. 1454.) It held that in order "to demonstrate that it was 'so closely related to the contractual relationship'" so as to be entitled to enforce the forum selection clause, Bancomer "must show by specific conduct or express agreement that (1) it agreed to be bound by the terms of the purchase agreement, (2) the contracting parties intended the bank to benefit from the purchase agreement, or (3) there was sufficient evidence of a defined and intertwining business relationship with a contracting party." (*Id.* at p. 1461.)

We consider whether, under any of these cases, Baan can assert the forum selection clause in the contract between BAL and Berclain which it did not sign, and which could not have been intended to benefit it since it did not enter the picture until several years after the agreement was made. Preliminarily, there is no basis for Baan to assert the clause simply because Berclain is now its wholly owned subsidiary. ■ Generally, a corporate entity does not assume the rights, duties and benefits of another entity which it acquires in a stock purchase. The two entities are assumed to remain separate absent circumstances justifying their treatment as a single entity, such as an alter ego showing or an asset purchase. (See *Mid-Century Ins. Co.* v. *Gardner* (1992) 9 Cal.App.4th 1205, 1212 [11 Cal.Rptr.2d 918] [it is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity].) ■ Thus, in order to demonstrate that it was so closely related to the BAL/Berclain contractual relationship as to be entitled to

enforce the forum selection clause, Baan must show that it agreed to be bound by the terms of the agreement, as the primary defendants in *Manetti* had, or that it had a "defined and intertwining business relationship" with Berclain, as had been shown in *Manetti* and also in *Lu* where the nonsigning defendant was alleged to be the alter ego of the signing defendant, and was shown to have participated directly in fraudulently inducing the plaintiffs to enter into the agreement at its inception. ■ The record here reveals Baan to be an independent entity, whose alleged conduct demonstrated its unwillingness to be bound by the terms of the BAL/Berclain exclusive distribution agreement.

In *Manetti* and *Lu*, the nonsigning defendants were held to the forum selection clause because they had been corporate participants with the signing defendant *at the time* the agreement containing the clause was signed. It was deemed unfair to allow a plaintiff to avoid the effect of the clause simply by choosing to name parties who, *for all intents and purposes* participated in the transaction, but who for some reason did not sign the agreement. Indeed, if Baan had owned Berclain at the time it entered into the agreement with BAL and if Baan had been involved in that transaction, then under *Lu* and *Manetti* it would likely be appropriate to require BAL to litigate its action against Baan in Quebec. But the actual story is quite different. Berclain and BAL entered into an agreement in 1992; in 1996 Baan purchased Berclain's stock. Baan had no role in the contractual transaction between Berclain and BAL, with which it is alleged to have tortiously interfered. There is nothing unfair about requiring a nonparty to a contract who had no close relationship to the contractual transaction to litigate an action in an otherwise proper forum. Nor, as urged by Baan, is it significant that the exclusive distribution contract will be relevant evidence at trial. The mere fact that the contract will need to be construed and interpreted in order to evaluate a plaintiff's claim of interference does not trigger application of a forum selection clause in the contract. It is also not germane that BAL could have sued Berclain for breach of contract, but chose not to. It was entirely legitimate for BAL to decide not to pursue its *wholly separate* claim against Berclain, whether the decision was based upon a desire to avoid litigating in Quebec, or for some other reason. Whether BAL sued Berclain or not does not change Baan's standing to assert the forum selection clause.[4]

---

[4]Baan's lack of standing defeats its efforts to dismiss as to both BAL and BBR. As to BBR, we can conceive of no ground for having even considered the motion. Aside from its distribution agreement with BAL, BBR was not shown to have any affiliation or relationship to Berclain or BAL. It signed no contract agreeing to litigate any disputes in Quebec and signed no agreements with Berclain or Baan.

*Disposition*

There is insufficient evidence in the record to support a finding that Baan had standing to seek dismissal based upon a contractual forum selection clause. The order dismissing the action is reversed. The matter is remanded for further proceedings. Appellants shall recover their costs on appeal.

McGuiness, P. J., and Parrilli, J., concurred.