[No. B162210. Second Dist., Div. Five. June 9, 2003.]

NET2PHONE, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CONSUMER CAUSE, INC., Real Party in Interest.

584

## COUNSEL

Goldberg and Goldberg, Lawrence A. Goldberg; Greines, Martin, Stein & Richland and Timothy T. Coates for Petitioner.

No appearance for Respondent.

Law Offices of Morse Mehrban and Morse Mehrban for Real Party in Interest.

## OPINION

**ARMSTRONG, J.**—In this mandamus proceeding, we hold that where a private plaintiff which has itself suffered no injury files a representative action under California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) alleging that certain of defendant's contractual provisions subject its customers to an "unlawful, unfair or fraudulent business . . . practice" and the contract contains a forum selection provision, the plaintiff is bound by that provision just as defendant's customers would be bound had they filed the action themselves.

## Facts and Procedural History

Net2Phone, Inc., provides internet telecommunication services, commonly known as "telephony services," that allow a computer user to place phone calls over the Internet, either to another computer or to a regular telephone. Net2Phone has a worldwide customer base, but its principal place of business is in New Jersey. Customers who wish to utilize Net2Phone's services must download software from Net2Phone's Web site. The software has links to an "End User License Agreement" and "Terms of Use." The customer must accept both in order to use the software. Net2Phone also offers a direct calling card, also purchased via Net2Phone's Web site, that enables customers to use a regular telephone to make a call that is carried through the Internet and then switched back to a local telephone network. According to Net2Phone, both services allow customers to make long distance calls for substantially less than current rates for traditional calling methods. The "Terms of Use" hyperlink appears on each page of the Web site. Language on the Web site advises the user that in order to access the site, he or she must agree to be bound by the "Terms of Use." The pertinent language concludes: "If you do not wish to be bound by these Terms of Use, you may not access or use the Site, Materials, or any of the Services. By using the Materials or Service, you are agreeing to be bound by these Terms of Use."

Consumer Cause, Inc., contends Net2Phone's failure to disclose in its advertising and promotional materials its billing practice of "rounding up" to the nearest minute (that is, charging for its services in full-minute increments regardless of use time) renders Net2Phone's promotional materials and advertising "false, misleading and fraudulent in violation of Business and Professions Code section 17200." Consumer Cause further contends Net2Phone's failure to disclose its billing practices except in its "Terms of Use" and "End User License Agreement," which are accessed via highlighted hyperlink, constitutes an unfair business practice under the UCL. It seeks an injunction, restitution and attorney's fees.

The "End User License Agreement" and "Terms of Use" contain forum-selection clauses providing that disputes arising under the contract shall be governed by New Jersey law. The clauses further provide: "Any dispute between you and Net2Phone regarding this agreement will be subject to the exclusive jurisdiction of the state and federal courts in the State of New Jersey. You agree to submit to exclusive jurisdiction in the State of New Jersey, and you expressly waive all defenses to jurisdiction."

Citing these forum selection provisions, Net2Phone filed a motion to stay or dismiss the action. (Code Civ. Proc., § 410.30, subd. (a).)[2] Consumer Cause opposed the motion, arguing it should not be bound by the forum selection clause in the contract because it was neither a party to the contract nor "closely related" to those who were. Consumer Cause further argued that its UCL claim was exempt from the forum selection clause because Net2Phone had failed to demonstrate that New Jersey was a suitable alternative forum for the action; unlike the UCL, which permits a plaintiff who himself has not suffered any injury to bring an action on behalf of the general public, New Jersey's Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1 to 56:8-20) permits only an injured party or the Attorney General to file such an action.

Respondent court found that Consumer Cause was not bound by the forum selection clause in Net2Phone's user agreement because Consumer Cause was acting as a private attorney general, and "had the real Attorney General brought this action, I would doubt if this court would be sending him to New Jersey to try the matter." The court ruled that Consumer Cause could pursue this action in California, but the action would be governed by New Jersey law.

█ We agree with respondent court that an unfair competition action brought by a public prosecutor would not be subject to the forum selection clause. This is because of the fundamentally different nature of an action brought by a prosecutor and privately pursued representative actions. (See *Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1045-1047 [111 Cal.Rptr.2d 260].) Although the label "private attorney general" is often used (or misused) to describe a private plaintiff in a UCL action, respondent court construed the term too literally. The filing of a UCL action by a private plaintiff does not confer on that plaintiff the stature of a prosecuting officer, and the fact that the plaintiff may be acting as a so-called private attorney general is irrelevant for purposes of the issue presented here. The relevant inquiry in determining whether a plaintiff, not a party to a contract, is bound by the contract's forum selection clause is whether (1) the third party is "closely related to the contractual relationship," and (2) the contractual forum state (in this case, New Jersey) provides a "suitable alternative forum" for the lawsuit. Both requirements are met here.

## DISCUSSION

█ Both the United States Supreme Court and the California Supreme Court have recognized that "[f]orum selection clauses play an important role

[2] Code of Civil Procedure section 410.30, subdivision (a), provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

in both national and interstate commerce." (*Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1493 [14 Cal.Rptr.2d 906], citing *The Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1, 10, 15 [92 S.Ct. 1907, 1913, 1916, 32 L.Ed.2d 513]; *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496 [131 Cal.Rptr.2d 374, 551 P.2d 1206].) Such clauses provide a degree of certainty, both for businesses and their customers, that contractual disputes will be resolved in a particular forum. (*Carnival Cruise Lines, Inc. v. Shute* (1991) 499 U.S. 585, 593-594 [111 S.Ct. 1522, 1527, 113 L.Ed.2d 622].) California courts routinely enforce forum selection clauses even where the chosen forum is far from the plaintiff's residence. (See, e.g., *Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 196-202 [127 Cal.Rptr.2d 847] [Hamburg, Germany, forum]; *CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347, 1355-1356 [46 Cal.Rptr.2d 412] [Ontario, Canada, forum].)

When a forum selection clause appears in "a contract entered into freely and voluntarily by parties who have negotiated at arm's length, . . . forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith, Valentino & Smith, Inc. v. Superior Court, supra,* 17 Cal.3d 491, 495-496.) This rule "accords with ancient concepts of freedom of contract and reflects an appreciation of the expanding horizons of American contractors who seek business in all parts of the world." (*The Bremen v. Zapata Off-Shore Co., supra,* 407 U.S. 1, 11 [92 S.Ct. 1907, 1914].)

A forum selection clause may also be enforced against a plaintiff who is not a party to the contract in question if the plaintiff is "closely related to the contractual relationship." The plaintiff challenging the forum selection clause has the burden of showing, in response to a defendant's motion to stay or dismiss, that enforcement of the clause would be unreasonable under the circumstances. (*Lu v. Dryclean-U.S.A. of California, Inc., supra,* 11 Cal.App.4th at p. 1493.)

*Consumer Cause is "closely related" to the contract between Net2Phone and its customers.*

As a threshold matter, we find that the forum selection clause would be enforceable had Net2Phone's customers filed this action themselves. We perceive no unfairness in Net2Phone's requirement that certain contractual terms must be accessed via hyperlink, a common practice in Internet business. The fact that the forum selection clause may have been a "take it or leave it" proposition, and not vigorously "bargained for" as Consumer Cause

contends, does not make the clause unenforceable. (*Carnival Cruise Lines, Inc. v. Shute, supra,* 499 U.S. at pp. 593, 601 [111 S.Ct. at pp. 1527, 1531].)

■ Although Consumer Cause is not itself a party to the contract, it has sued in a representative capacity challenging certain contractual terms. By so doing, Consumer Cause purports to assert the rights of those who *are* parties to the contract. If it prevails, Consumer Cause will succeed in altering the terms of the contract, and reap the fruits of victory including attorney's fees. Consumer Cause is "closely related" to the contractual relationship because it stands in the shoes of those whom it purports to represent. Its argument to the contrary is inconsistent with its position as a representative plaintiff. Were we to hold otherwise, a plaintiff could avoid a valid forum selection clause simply by having a representative nonparty file the action. (See *Lu v. Dryclean-U.S.A. of California, Inc., supra,* 11 Cal.App.4th at p. 1494.)

In *Lu*, a franchisor's corporate parent was found to be "closely related" to the contractual relationship between the franchisor and its franchisee, because the franchisor was alleged to have participated in the fraudulent misrepresentations that induced the plaintiff to enter into the franchise agreement. Consumer Cause correctly points out that the case is factually distinguishable on that basis. However, the plaintiff in *Lu* also alleged that the parent was the "alter ego" of the franchisor that signed the franchise agreement; in other words, for purposes of the lawsuit, the two were one and the same. The position of Consumer Cause, the representative plaintiff, is similar in that respect.

*Bancomer, S. A. v. Superior Court* (1996) 44 Cal.App.4th 1450 [52 Cal.Rptr.2d 435], cited by Consumer Cause in its return to the petition, is distinguishable. That case involved a bank that had no relationship to the contractual dispute other than being thrust into a position as trustee, and which was attempting to enforce, not defeat, a forum selection clause. Unlike Consumer Cause, the bank in that case had nothing to gain from resolution of the contractual dispute.

*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1 [108 Cal.Rptr.2d 699], cited by Consumer Cause, is also factually distinguishable. In that case, a class action filed pursuant to the California Consumers Legal Remedies Act (CRLA) (Civ. Code, § 1750 et seq.), the court held a forum selection clause invalid because the CRLA contains a provision that voids any purported waiver of rights as being contrary to California public policy. The UCL, under which Consumer Cause brought this action, contains no such limitation.

*New Jersey is a suitable alternate forum.*

The New Jersey Consumer Fraud Act (CFA) (N.J. Stat. Ann. § 56:8-1 to 56:8-20), is similar in many ways to the UCL. However, it differs from the UCL in one crucial respect: an action under the CFA must be filed by either the Attorney General or "[a]ny person who suffers any ascertainable loss of moneys or property. . . ." Because Consumer Cause has itself suffered no ascertainable loss from Net2Phone's alleged unlawful business practices, it argues that enforcement of the forum selection clause would be unreasonable because it would not have standing to bring this action in New Jersey.

Although the New Jersey Legislature has not seen fit to confer on private parties who are not injured the right to bring a representative action on behalf of those who are, this does not necessarily mean that New Jersey does not provide the means to protect injured consumers. Any customer of Net2Phone who claims to have been injured by Net2Phone's billing practices may bring an action in New Jersey, or may prevail on the Attorney General of New Jersey to do so. Significantly, Consumer Cause does not claim Net2Phone's customers would not be adequately protected were they required to pursue their claims in New Jersey. Instead, Consumer Cause has focused only in its *own* lack of standing. While it is true that Consumer Cause stands to lose the opportunity to recover attorney's fees should it prevail in a California UCL action, our paramount consideration is the protection of consumers, not the enrichment of attorneys.

### DISPOSITION

The petition for writ of mandate is granted. A peremptory writ shall issue directing respondent court to vacate its order of October 1, 2002, denying the motion of defendant Net2Phone to stay or dismiss the action, and enter a new and different order granting the motion to stay. Costs are awarded to Net2Phone.

Turner, P. J., concurred.

**MOSK, J.**—I respectfully dissent.

A trial court's decision to enforce or not enforce a forum selection clause is reviewed for an abuse of discretion. (*Bancomer, S. A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1457 [52 Cal.Rptr.2d 435]; but see *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1680-1681 [16 Cal.Rptr.2d 417] [substantial-evidence test].) For the following reasons, I do not believe the trial court abused its discretion in refusing to enforce the forum selection clauses in this case.

The New Jersey forum selection clause in the contracts between defendant Net2Phone, Inc. (Net2Phone), and various consumers is not applicable or enforceable as to claims brought by plaintiff Consumer Cause, Inc. (Consumer Cause), under California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL).[1] The enforcement of such forum selection clauses to divest California of private attorney general cases under the UCL is contrary to California public policy. If such clauses are enforceable, private attorney general actions under California regulatory statutes could be frustrated. In addition, the plaintiff is not a party to any contract with Net2Phone; the claims are statutory, not contractual; and New Jersey is not a suitable alternative forum available to plaintiff.

*Public policy precludes enforcement of forum selection clauses under these circumstances.*

"California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy." (*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 12 [108 Cal.Rptr.2d 699].) Enforcement of the forum selection clause here would substantially diminish the rights of California residents in contravention of public policy.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." (§ 17200). The coverage of the UCL is " 'sweeping, embracing " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' [Citations.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].) A person (defined to include a corporation (§ 17201)) who undertakes such conduct may be enjoined from engaging in the unfair business practice and ordered to pay restitution. (§ 17203.)

The "primary purpose" of the UCL "is to preserve fair business competition by extending protections traditionally available to business competitors to the consuming public." (*Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488, 493 [99 Cal.Rptr.2d 721].) The UCL reflects " '[T]he tendency of the law, both legislative and common . . . in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade.' " (*People ex rel. Mosk v. National Research Co. of Cal.* (1962) 201 Cal.App.2d 765, 770 [20 Cal.Rptr. 516].) Accordingly, the UCL constitutes

[1]Undesignated statutory references shall be to the Business and Professions Code.

an important public policy of the State of California, notwithstanding recent allegations of abuses in its use. (See Stern, Unfair Business Practices and False Advertising: Bus. & Prof. Code § 17200 (5th ed. 2000) p. 5 [referring to the UCL as "a sprawling oak" of consumer protection law].) That public prosecutors in California must by California law be notified of UCL appellate proceedings in California so that they may participate (§ 17209) is a further indication that the UCL reflects an important public policy of California.

In order to implement the important public policies of the UCL, the Legislature provided that multiple parties had standing to sue to enforce the act. Thus, rather than limiting enforcement of the UCL to aggrieved parties, the Legislature specified that actions for relief under the UCL may be brought by state or local prosecutors "in the name of the People of the State of California" *"or by any person acting for the interests of itself, its members or the general public."* (§ 17204, italics added.) Accordingly, the UCL allows anyone to act as, in effect, a private attorney general to protect the public against certain commercial wrongs and deceptions. The UCL reflects the Legislature's conclusion that individual claims or class actions in California courts or actions by California public officials are not adequate to protect California consumers. To allow private parties to restrict the availability of relief under the UCL to that offered by the courts or public officials of another state conflicts with the broad means of enforcement of the UCL established by the California Legislature.

That restriction is precisely the effect of the majority's opinion enforcing the forum selection clauses and sending this action to New Jersey. New Jersey's Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1 to 56:8-20), does not allow private attorney general actions such as that brought by Consumer Cause here. The majority's opinion eviscerates the UCL by ordering the dispute to a jurisdiction that does not permit private attorneys general to prosecute a statutory unfair competition action.

Contrary to the majority's assertion, this is not an issue of the "enrichment of attorneys." (Maj. opn., *ante*, at p. 590.) It is an issue of preserving the statutory scheme enacted by the Legislature and of maintaining a means of enforcing the UCL's important public policies. As this court recently observed, " '[R]epresentative UCL actions make it economically feasible to sue when individual claims are too small to justify the expense of litigation, and thereby encourage attorneys to undertake private enforcement actions.' " (*Rosenbluth Internat., Inc. v. Superior Court* (2002) 101 Cal.App.4th 1073, 1077 [124 Cal.Rptr.2d 844].) "Where the subject of the action is an unlawful business practice or false advertising that harms individual consumers, the

consumer/victims, powerless individually, may welcome the opportunity to have their rights vindicated in a representative action under the UCL." (*Id.* at pp. 1077-1078.)

The enforcement of forum selection clauses under the circumstances of this case will allow parties to conduct business in California but provide themselves with immunity from one important and widely used procedure to deter certain proscribed conduct—that procedure being the enforcement of rights by private attorneys general. (See, e.g., §§ 17200, 17204, 17500 & 17535; Code Civ. Proc., § 1021.5; *Angelheart v. City of Burbank* (1991) 232 Cal.App.3d 460 [285 Cal.Rptr. 463] [private attorney general principle applies to constitutional rights, statutory rights and important public policies].)

In *Hall v. Superior Court* (1983) 150 Cal.App.3d 411 [197 Cal.Rptr. 757] (*Hall*), the court held that a forum selection clause could not be enforced so as to result in an evasion of the protections of California's Corporate Securities Law (Corp. Code, § 25000 et seq.). In *America Online, Inc. v. Superior Court, supra,* 90 Cal.App.4th 1 (*America Online*), the court held that a forum selection clause could not be enforced in connection with an action under California's Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). As stated in *America Online*, "In this respect injunctive relief afforded by the CRLA is unique, as its purpose is not simply to correct future private injury but to remedy a public wrong. As explained by our Supreme Court in *Broughton* [*v. Cigna Healthplans of California* (1999)] 21 Cal.4th [1066,] 1080 [90 Cal.Rptr. 2d 334, 988 P.2d 67]: 'Whatever the individual motive of the party requesting injunctive relief, the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered. . . . In other words, the plaintiff in a CLRA damages action is playing the role of a bona fide private attorney general. [Citation.]' (Fn. omitted.)" (*America Online*, at p. 16.)[2]

The same principle applies here. It is true that in both *Hall, supra,* 150 Cal.App.3d 411, and *America Online, supra,* 90 Cal.App.4th 1, there were express antiwaiver provisions in the statutes in question. But it appears that the protections of a statute such as the UCL generally may not be waived by contract because the public interest is involved. (Civ. Code, § 1668; see also

---

[2]The court also noted that the plaintiff's "complaint also includes a cause of action under California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) which shares some remedial similarities with CLRA, including a private right to sue as a class action [citation], recovery of restitution and injunctive relief [citations], plus enhanced remedies for senior or disabled persons (Bus. & Prof. Code, § 17206.1)." (*America Online, supra,* 90 Cal.App.4th at p. 15, fn. 10.)

_Tunkl v. Regents of University of California_ (1963) 60 Cal.2d 92, 94-98 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]; _Henrioulle v. Marin Ventures, Inc._ (1978) 20 Cal.3d 512, 517 [143 Cal.Rptr. 247, 573 P.2d 465].)

Moreover, the court in _Hall, supra,_ 150 Cal.App.3d at page 418, said that even in the absence of an antiwaiver provision, the trial court may have discretion to enforce or not enforce the forum selection clause and that "California's policy to protect securities investors, without more, would probably justify denial of enforcement of the choice of forum provision . . . ." Under that rationale, in the instant case, the trial court's discretion not to enforce the forum selection clause should be upheld.[3]

That another regulatory statute may have a specific provision preventing enforcement of a forum selection clause (see, e.g., the California Franchise Relations Act (§ 20040.5); _Jones v. GNC Franchising, Inc._ (9th Cir. 2000) 211 F.3d 495; but see _Bradley v. Harris Research, Inc._ (9th Cir. 2001) 275 F.3d 884 [§ 20040.5 preempted by the Federal Arbitration Act as to arbitrations]) does not suggest that absent such a provision, a court is precluded from enforcing a forum selection clause when such enforcement would contravene public policy reflected in a statute. It is established that forum selection clauses that violate public policy are not enforced, and statutes are a principal reflection of public policy.

The majority acknowledge that persons cannot bring representative actions under the New Jersey statute that is comparable to the UCL, but point to the fact that under that New Jersey statute, actions may be brought in New Jersey by public prosecutors on behalf of the customers and other members of the public. (Maj. opn., _ante,_ at p. 590.) In California, however, any person can act as a "private attorney general" in bringing a UCL action. (See _Mortera v. North America Mortgage Co._ (N.D.Cal. 2001) 172 F.Supp.2d 1240, 1242-1243.) As the Supreme Court said in _Stop Youth Addiction, Inc. v. Lucky Stores, Inc._ (1998) 17 Cal.4th 553, 561 [71 Cal.Rptr.2d 731, 950 P.2d 1086], in pointing out that both public prosecutors and persons may enforce the UCL, "That the Legislature in section 17204 used the disjunctive when listing the entities empowered to bring UCL '[a]ctions for . . . relief'

---

[3]In _Furda v. Superior Court_ (1984) 161 Cal.App.3d 418, 427, footnote 5 [207 Cal.Rptr. 646], the court suggested that policies underlying statutes such as the UCL did not preclude enforcement of choice-of-forum clauses when the chosen state had a forum with "a strong interest in this transaction" and the parties had a "substantial number of contacts" with that forum. That case involved breach of contract and fraud claims and was not brought under the UCL.

plainly suggests it meant to designate such entities in the alternative."[4] The continued existence of one avenue of relief does not make acceptable the extinction of others provided by the UCL statutory scheme.

*The forum selection clause is not applicable here.*

Net2Phone's standard form agreement with its customers includes the following provision: "GOVERNING LAW; JURISDICTION These Terms of Use shall be governed and construed in accordance with the laws of the State of New Jersey. You agree that in any legal action or proceeding between you and Net2Phone for any purpose concerning this Agreement, you agree to submit to exclusive jurisdiction [*sic*] the state and federal courts of New Jersey and you expressly waive all defenses to jurisdiction. Any cause of action or claim you may have with respect to the Site, Services or Materials must be commenced within one (1) year after the claim or cause of action arises or such claim or cause of action is barred. Net2Phone's failure to insist upon or enforce strict performance of any provision of these Terms of Use shall not be construed as a waiver of any provision or right. Neither the course of conduct between the parties nor trade practice shall act to modify any provision of these Terms of Use. Net2Phone may assign its rights and duties under these Terms of Use to any party at any time without notice to you."

Plaintiff's consumer complaint contains allegations of false advertising and violations of section 17200. Consumer Cause contends that Net2Phone's failure to disclose in its advertising and promotional materials its practice of "rounding up" the time elapsed for internet telephone calls to the nearest minute renders its promotional materials and advertising "false, misleading and fraudulent in violation of Title 15 U.S.C. section 45(a)(1) (unfair methods of competition and unfair or deceptive acts or practices affecting commerce) therefore of Business and Professions Code section 17200." Consumer Cause also alleges that Net2Phone's practice of charging consumers for "ringing time"—the time elapsing once a call is placed and prior to connection with the recipient of the call—without disclosing the billing system in its promotional materials, usage instructions, or Web site constitutes false advertising and an unfair business practice. Finally, Consumer Cause alleges that Net2Phone's practice of refusing to connect calls made on its prepaid calling cards when the balance on the cards is less than $1—also

---

[4]*Payne v. National Collections Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1045-1047 [111 Cal.Rptr.2d 260] does not suggest what the majority call a "fundamentally different nature of an action brought by a prosecutor and privately pursued representative actions" (maj. opn., *ante*, at p. 587) because that case distinguished actions brought by a prosecutor and private class actions.

undisclosed in Net2Phone's promotional materials—constitutes an unfair business practice and false advertising.

The claims are brought by Consumer Cause, which has no contractual relationship with Net2Phone. Consumer Cause alleged it filed the action on behalf of California residents "billed by Net2Phone for such services during the four years preceding the filing of the action." Whether all of such residents had contracts with forum selection clauses is not clear.[5] Consumer Cause did not need to represent only Net2Phone customers in order to bring an action under the UCL. The action may be brought "by any person acting for the interests of . . . the general public." (§ 17204.) As the plaintiff seeks to enjoin certain alleged unfair and deceptive practices, including advertising and nondisclosure activities,[6] plaintiff is, in effect, acting on behalf of the general public, rather than only for any group of Net2Phone customers.[7]

The forum selection clause is not applicable here because Consumer Cause is not a party to any contract containing a forum selection clause and neither are members of the California public who would be the purported beneficiaries of the action. Generally, a nonsignatory to an agreement is not bound by a forum selection clause in the agreement. (*Berclain America Latina v. Baan Co.* (1999) 74 Cal.App.4th 401, 405 [87 Cal.Rptr.2d 745].) The exception to this rule is when the party sought to be bound by the forum selection clause is closely related to a signatory to the agreement. In *Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490 [14 Cal.Rptr.2d 906], the court held that a forum selection clause could be enforced against codefendants who had not signed the agreements containing the forum selection clause but who were alleged to have participated in the alleged franchise law violations and to be the "alter ego" of the party that did sign the agreement. Because of this close relationship, to not enforce the forum selection clause under the circumstances "would be to permit a plaintiff to sidestep a valid forum selection clause simply by naming a closely related party who did not sign the clause as a defendant." (*Id.* at p. 1494.)

No such sidestepping is taking place here to justify departing from the general rule that parties are not bound by the provisions of contracts to

---

[5]Net2Phone stated that the provision has been in its contracts since before January 1998, but customers billed during the last four years may have had contracts from an earlier period.

[6]A violation of the false advertising law (§ 17500) constitutes a violation of the UCL. (*Freeman v. Time, Inc.* (9th Cir. 1995) 68 F.3d 285, 288-289.)

[7]The forum selection clause contains a one-year limitations period, while the UCL provides for a four-year statute of limitations (§ 17208). (See *Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1430 [131 Cal.Rptr.2d 684] [contractual limits on statutes of limitations must be reasonable and generally involve "straightforward commercial contracts plus the unambiguous breaches or accrual of rights under those contracts"].)

which they are not parties. Although Consumer Cause purports to act on behalf of consumers, many of whom are parties to contracts containing the forum selection clause, it is not a party to such contracts. Moreover, Consumer Cause raises noncontractual claims, and it acts on behalf of the general public.

*New Jersey is not a suitable alternative forum.*

The California Supreme Court has stated that an action may not be dismissed for an alternative forum " 'unless a suitable alternative forum is available to the plaintiff [citations].' " (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 752 [1 Cal.Rptr.2d 556, 819 P.2d 14].) New Jersey is not a suitable alternative forum for this action, an unfair business practices lawsuit brought by Consumer Cause on behalf of California consumers. As conceded by the majority, this lawsuit could not be brought in New Jersey, for New Jersey's Consumer Fraud Act, New Jersey Statutes Annotated section 56:8-1 to 56:8-20, does not confer upon private parties who are not personally injured the ability to bring a representative action on behalf of others. As discussed above, this ability is an important component of the rights of the members of the public in California. Because Common Cause cannot bring this suit as a private attorney general in New Jersey, the trial court correctly ruled that New Jersey is not a suitable alternative forum and declined to enforce the forum selection clause.

## CONCLUSION

For each of the reasons I have given, I would have affirmed the ruling of the trial court denying the motion to dismiss.

The petition of real party in interest for review by the Supreme Court was denied August 27, 2003. Werdegar, J., did not participate therein. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.