Filed 6/28/13  Ranjan v. Patni Computer Systems CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RAJIV RANJAN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>PATNI COMPUTER SYSTEMS, LTD.,<br>et al.,<br><br>        Defendants and Respondents. | A134410<br><br>(Alameda County<br>Super. Ct. No. HG11587669) |

Rajiv Ranjan appeals from an order granting respondents Patni Computer Systems, Ltd. (Patni), Patni Telecom Solutions, and iGate Inc.'s motion to dismiss the complaint.  Ranjan contends that the court erred in enforcing a forum selection clause contained in the Employee Stock Option Plan Patni ESOP 2003 (Revised 2009) (ESOP), pursuant to which Ranjan was awarded stock options.  Ranjan also asserts as error the trial court's determination that the employment contract between the parties was subject to the ESOP's forum selection clause.   We affirm.

## I.  FACTUAL BACKGROUND

In late August 2010, Jeya Kumar, then the Chief Executive Officer of Patni, offered Ranjan the position of executive vice president and global head of business operations based in Patni's Bangalore office in India.  The offer was made by telephone with Kumar indicating that Steve Correa, Patni's chief human resources officer would follow up with Ranjan to discuss the offer.  On September 2, 2010, Patni, through Correa, forwarded an e-mail to Ranjan stating that he was enclosing an intent to offer letter

1

composed of a term sheet and a compensation break up sheet explaining Patni's proposed compensation, and informing Ranjan that he would be eligible for stock awards "as per Company Scheme an[d] in line with your level, as/when eligible." Ranjan and Correa thereafter discussed the offer in a video conference. Correa assured Ranjan that his concerns about stock options should be resolved by the term and compensation sheets.[1] The term sheet stated that the initial stock awards would be 20,000 restricted stock units (RSUs) subject to six months of continued service with satisfactory performance, and approvals from the compensation committee, the board, and Kumar.

The vesting schedule for the stock awards was 30 percent on year one, 30 percent on year two, and 40 percent on year three of the grant date. The term sheet also provided for acceleration of stock awards in the event of a change of control of Patni. Specifically, the term sheet stated as follows: "2.5 Acceleration of stock awards. Acceleration in the event of a 'change of control' except in the event that successor company assumes or replaces award with equivalent value award. [¶] Vesting of assumed/replacement award accelerates in the event of involuntary termination without 'cause' within 24 months after 'change of control'[.]" Appendix-I to the term sheet defined a change of control as "the acquisition, sale, or transfer of more than 50% of the outstanding shares of the Company."

On September 6, 2010, Patni sent Ranjan a "Letter of Offer" offering Ranjan the position as the "Executive Vice President & Global Head of Business Operations." The offer letter was not signed; the parties agreed that Kumar would sign the offer letter shortly and forward it to Ranjan. The offer provided that Ranjan would join Patni on or before September 20, 2010. It listed the details of salary and benefits and numerous conditions of employment and included several attachments. The offer provided that "The Management reserves the right to change the different components/allowances in the total emoluments package, at its own discretion, at any time in future." In addition,

---

[1] Ranjan was concerned about protecting his stock option rights in the event Patni was taken over by another company. Ranjan had heard rumors about possible takeover bids for Patni.

Annexure-A provided that 20,000 RSUs would be awarded upon completion of six months of service with Patni, "subject to satisfactory performance and approval from the Compensation Committee & the Board."

On September 12, 2010, Ranjan signed the offer and sent it to Patni. Kumar signed the offer in India. Ranjan started the position with Patni in Bangalore on September 20, 2010. On September 27, 2010, Ranjan signed an "Appointment letter." The letter provided the details of Ranjan's compensation including an annual salary of 17,000,000 rupees, the equivalent of approximately $344,478.

On November 1, 2010, Kumar met with Ranjan and gave him a "Notice of Stock Option Grant." It provided that Ranjan was eligible to exercise 20,000 stock options over a three-year period, with 6,000 of those options vesting in one year, on November 1, 2011. The notice further provided that the option grant was governed by the terms of the ESOP. Ranjan signed the notice indicating that he accepted the grant. The ESOP provided that "[t]he minimum Vesting Period of an Employee Stock Option shall not be less than a period of 12 months from the date of Grant." The ESOP also stated that the terms and conditions of the plan were governed by the laws of India and that the High Court of Bombay had jurisdiction regarding any disputes arising under the plan.

On April 26, 2011, Kumar notified Ranjan that he had successfully completed his probationary period. The following day Kumar informed Ranjan that his position was being eliminated as a result of the anticipated merger and acquisition of Patni by iGate affiliates. Kumar terminated Ranjan effective immediately.

Ranjan asked Kumar whether he would be able to exercise his stock options before the layoff. Kumar explained that Indian law did not permit Ranjan's stock options to vest until after he had been employed with Patni for at least one year. Kumar provided Ranjan with a severance letter stating that he would receive three months of salary and a severance payment comprised of one year's base salary plus "1x target variable compensation" within three days subject to his agreement to accept the amounts as a full settlement of all claims against Patni. Ranjan declined to sign the letter because he was not willing to waive his rights to the stock options.

3

On May 12, 2011, iGate affiliates acquired Patni.

On July 27, 2011, Ranjan filed a complaint against respondents alleging several causes of action including breach of contract, fraudulent misrepresentation, fraudulent nondisclosure, and money had and received. He alleged a separate cause of action against iGate for interference with contract. He sought damages of $718,089 representing the severance payments he claimed were owed, and either the stock options or the value of the stock options which he valued at $223,654.

Respondents moved to dismiss the complaint based on the forum selection clause in the ESOP which identified the High Court of Bombay as the forum for any disputes regarding the award of stock options. Alternatively, respondents sought a stay of the action on the ground of forum non conveniens to allow Ranjan to bring his action in India.

Ranjan opposed the motion, contending that there was no forum selection clause in his employment contract with Patni. He argued that the offer letter and attachments constituted the employment contract between the parties, and that even if the appointment letter was the employment contract, it did not incorporate or reference the ESOP. In addition, he asserted that Patni was foreclosed from adding new terms to its existing contract with Ranjan when it awarded him stock options in November 2010. He urged that since he was already entitled to stock options under his employment contract, the award of stock options was not supported by any new consideration, and thus Patni's attempt to add a forum selection clause in the ESOP was not binding. Alternatively, he argued that Alameda County was not an inconvenient forum because plaintiff is a resident of Alameda County and Patni Telecom and iGate have their headquarters in California. Finally, he contended that he did not receive adequate notice of the forum selection clause. Ranjan did not dispute that India was an adequate forum.

The court granted the motion, finding that the forum selection clause in the ESOP governed the action. It found that the forum selection clause was mandatory, and that its enforcement was not unreasonable, noting that Ranjan did not contend that the clause was invalid or that litigating in India would be unreasonable. The court further rejected

4

Ranjan's argument that the clause amounted to an unenforceable modification of his employment contract because Ranjan separately agreed to the clause which the grant of stock options incorporated. It found that even if the ESOP could be construed as a modification of the employment contract, it was supported by the additional consideration that Ranjan was awarded stock options just weeks after joining Patni, rather than having to wait the six months specified in the offer letter or term sheet. The court also concluded that Ranjan's notice argument was lacking. Ranjan could not avoid the clause simply because he had not read the ESOP.

## II. DISCUSSION

### 1. The Employment Contract

Ranjan contends that his employment contract did not include a forum selection clause. He argues that his employment contract consisted of Patni's offer letter and the term sheet that he accepted and returned to Patni on September 12, 2010. We review the parties' arguments on the contract issue under the substantial evidence standard of review. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746–747 [where extrinsic evidence has been admitted regarding interpretation of a contract, the appellate court will apply the substantial evidence standard of review].)

The trial court rejected Ranjan's argument, finding that Ranjan was bound by the forum selection clause in the ESOP. It noted that the offer letter had not promised stock options but simply provided that he "would receive stock options after six months of employment, depending on performance and subject to approval by Patni's Compensation Committee and Board." Even if the offer letter and term sheet constituted the contract between the parties, an issue which we need not decide here, Ranjan subsequently received stock options on November 1, 2010, prior to completion of six months of service, and signed a new contract regarding stock options. The Notice of Stock Option Grant (Notice) provided that Ranjan was granted 20,000 options effective November 1, 2010, each option entitling him to apply for and be allotted one share of Patni stock at an exercise price of rupees 2/1 per share pursuant to a vesting schedule. The Notice also provided that "[t]his option is governed by the terms of the Employee

5

Stock Option Plan Patni ESOP 2003 (Revised 2009) and any amendment thereof." Both Ranjan and Kumar signed the Notice. The trial court found that while the offer letter suggested Ranjan would receive stock options after six months, the Notice granted Ranjan stock options "just weeks after joining the company." By granting Ranjan the stock options grant earlier than stated in the offer letter, Ranjan was given the ability to start vesting his RSUs at least four months earlier than had been indicated in the offer letter or term sheet.

"Consideration is inherent where stock options are granted to employees and the employee continues employment knowing of the options [citation] and no additional consideration in money or property is required." (*Newberger v. Rifkind* (1972) 28 Cal.App.3d 1070, 1073.) Consideration is also presumed where the contract is in writing. (Civ. Code, § 1614.) Here, not only was the Notice in writing, it granted Ranjan stock options several months earlier than promised in the offer letter. The added benefit of receiving the stock options earlier than bargained for constituted new consideration for any modification to Ranjan's existing contract. As the trial court implicitly ruled, the Notice constituted a new contract between the parties concerning the stock options. As the Notice specifically incorporated the ESOP, Ranjan, having signed the Notice, was bound by the ESOP's terms and conditions. (See Civ. Code, § 1698 [written contract may be modified by another contract in writing].) To the extent that the new contract on the stock options imposed new or onerous terms, it was supported by the additional consideration that Ranjan received the grant of stock options considerably sooner than expected under the original employment contract. (See *Krobitzsch v. Middleton* (1946) 72 Cal.App.2d 804, 808 [supplemental agreement changing terms of original contract and imposing new terms requires consideration to support it].)

Ranjan disputes that there was any new consideration for the grant of stock options, contending that the modification diminished the value of the stock options benefit because it eliminated vesting upon a change of control of Patni. He argues that he was entitled to accelerated vesting of stock options upon a change of control under the provisions of the term sheet. But the term sheet on its face provided only for an

6

acceleration of stock *awards* in the event of a change of control. Moreover, the term sheet did not *mandate* an award of stock options; rather it made the award conditional upon six months of continued service and Patni's approval. Patni subsequently awarded Ranjan stock options earlier than promised in the term sheet. Even assuming the term sheet was part of Ranjan's employment contract, this modification of those terms resulted in Ranjan agreeing, by his acceptance of the Notice, to the new terms and conditions regarding stock options set forth in the ESOP.

## 2. The Forum Selection Clause

There is a split of authority regarding the correct standard of review on a motion to enforce a forum selection clause. (*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 7–9 (*America Online*); see *Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 198–199 (*Intershop*).) The majority of California courts have reviewed a trial court's decision to enforce a forum selection clause for abuse of discretion. (See, e.g., *Schlessinger v. Holland America* (2004) 120 Cal.App.4th 552, 557; *America Online, supra,* at p. 9; see also *Bancomer, S.A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1457 (*Bancomer*).) At least two California courts, however, have applied a substantial evidence standard of review. (See, e.g., *CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347, 1354; *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1680.) Our colleagues in Division Two persuasively explained why the abuse of discretion standard is proper in this situation, and hence we join them in adhering to that standard. (*America Online, supra*, at pp. 7–9.) Accordingly, we review the order enforcing the forum selection clause for abuse of discretion.

Ranjan contends that enforcement of the forum selection clause here would be unreasonable because even if it is applicable to the stock options, it does not apply to his

action insofar as it seeks damages for breach of contract.[2]  Patni argues that Ranjan has waived this issue because he did not raise it below.

While Ranjan did not raise this precise issue in the trial court, he did urge that the forum selection clause was not part of the employment contract between the parties.[3]  In any event, it is less clear whether the issue of the applicability of the forum selection clause to Ranjan's claim for damages as a result of breach of the employment contract is purely one of law.  The parties dispute the terms of the employment contract, and Ranjan's claim for damages for breach of that contract includes a demand for the value of his stock options.  As Patni argues, under these circumstances, it would be an unreasonable interpretation to conclude that the forum selection clause applies only to the question of Ranjan's claim for stock options.  This claim is inextricably intertwined with his claims for severance and other damages arising out of the employment contract.  As Ranjan acknowledged in his declaration in opposition to Patni's motion to dismiss his action, he refused to waive his claims for the stock options against Patni in order to receive his severance payments.  Whether Ranjan is entitled to stock options thus appears to be the central issue in the case.  Hence, the court did not abuse its discretion in implicitly finding that the forum selection clause applied to the entire action.

"When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to *all* disputes arising out of the transaction or relationship." (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 469.)  Here, the choice of law provision in the ESOP which applies to the stock options and vests jurisdiction "in

---

[2] Ranjan does not contest the adequacy of India as a forum.  California law presumes that a forum selection clause is valid, provided that its enforcement would not be unreasonable.  (*America Online, supra,* 90 Cal.App.4th at p. 11.)

[3] The issue of whether to consider an issue of law raised for the first time on appeal is one within our discretion.  (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.)  We are not required to consider a new issue even if it raises a pure question of law.  (*Ibid.*)

8

respect of any and all matters, disputes or differences arising in relation to or out of this Plan . . . .” in the High Court of Bombay applies to the parties’ dispute not only of the stock options but to the employment contract as well, particularly given that Ranjan also seeks stock options as damages for his breach of contract claim. (*Nedlloyd Lines B.V.*, *supra*, 3 Cal.4th at pp. 469–470; *Olnick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1299–1300 [choice of law provision in employment agreement applies to FEHA and tortious wrongful discharge claims that are not predicated on the agreement].) Each of Ranjan’s claims relate in some way to his rights to stock options under the ESOP. His contract and tort claims are inextricably bound up in the core question of whether Ranjan is entitled to the stock options under the ESOP.[4] Consequently, all of Ranjan’s claims are within the scope of the forum selection clause.

*Bancomer, supra,* 44 Cal.App.4th at pp. 1461–1462, cited by Ranjan, is inapposite. There, the court held that Bancomer could not enforce a forum selection clause in a purchase agreement to which it was not a party. (*Id.* at p. 1454.) The court further held that the claims against Bancomer for fraudulent inducement were beyond the scope of the forum selection clause because they were based on conduct which preceded the formation of the agreement and did not relate to the rights and responsibilities of the parties under the agreement. (*Id.* at p. 1454, 1461.) In contrast, here, Ranjan is a party to the ESOP containing the forum selection clause and his claims for stock options and his contract and tort claims are so closely related that it would be unreasonable not to enforce the forum selection clause.

Ranjan also contends that he did not receive adequate notice of the forum selection provision. He argues that the clause was “buried” on page 29 of a 30 page booklet.

In *Intershop, supra,* 104 Cal.App.4th at p. 202, the court held that where the contract identifies the jurisdiction which is the selected forum for disputes, the notice is sufficient. As the *Intershop* court explained, the fact that the plaintiff chooses not to read

---

[4] We do not here decide whether Ranjan’s tort claims are governed by Indian law; we conclude only that it is reasonable to have the related tort claim adjudicated in the same forum as the contract claim.

the contract containing the clause does not render the notice insufficient. "[T]he forum selection clause plainly says that Hamburg, Germany is the selected forum. Plaintiff had full notice that he was agreeing to Hamburg as the place of trial, even though he may have chosen not to read the four-page contract. We conclude as a matter of law that no basis exists for denying enforcement of the forum selection clause." (*Ibid.*, cf. *Hunt v. Superior Court* (2000) 81 Cal.App.4th 901, 908 [insufficient notice where contract merely provided agreement to submit to "the applicable jurisdiction" without identifying the state]; *Carnival Cruise Lines, Inc. v. Superior Court* (1991) 234 Cal.App.3d 1019, 1021, 1026–1027 [issue of whether passengers had notice of forum selection clause contained on tickets for passage remanded to the trial court].)

Ranjan further contends that iGate cannot enforce the forum selection clause because it was not a party to the ESOP. This contention lacks merit.

The ESOP expressly defined the "Company" obligated under the plan as Patni "or any successor thereof." iGate acquired Patni in May 2011. Specifically, iGate Global Solutions Limited, India acquired an 11.04 percent interest in Patni while Pan Asia iGate Solutions Mauritius acquired a 71.36 percent interest in Patni. Under the terms of the ESOP, iGate is a successor-in-interest to Patni and is bound by the terms and conditions of the ESOP. Moreover, Ranjan's allegations against iGate of interference with contract are directly related to his rights under the ESOP and the employment contract. Ranjan alleges that iGate was aware of his rights to the stock options and required as a condition of its acquisition of Patni that it terminate Ranjan's contract. Given these factual allegations, iGate's alleged conduct is closely related to the contractual relationship between Ranjan and Patni. The fact that it did not sign the ESOP does not render the forum selection clause unenforceable. (*Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1494.) "To hold otherwise would be to permit a plaintiff to sidestep a valid forum selection clause simply by naming a closely related party who did not sign the clause as a defendant." (*Ibid.*)

*Berclain America Latina v. Baan Co.* (1999) 74 Cal.App.4th 401, upon which Ranjan relies, is distinguishable. There, the defendant conceded that it was neither a

10

signatory nor a third party beneficiary to the contract containing the forum selection clause. (*Id.* at p. 405.) The court held that there was no basis for the defendant to assert the forum selection clause simply because it now owned the company that was a party to the contract inasmuch as a corporate entity generally does not assume the rights, duties and benefits of another entity which it acquires in a stock purchase. (*Id.* at p. 407.) "[I]n order to demonstrate that it was so closely related to the BAL/Berclain contractual relationship as to be entitled to enforce the forum selection clause, Baan must show that it agreed to be bound by the terms of the agreement . . . or that it had a 'defined and intertwining business relationship' with Berclain, [e.g.,] where the nonsigning defendant was alleged to be the alter ego of the signing defendant, and was shown to have participated directly in fraudulently inducing the plaintiffs to enter into the agreement at its inception." (*Id.* at pp. 407–408.) Here, given that iGate has not only acquired Patni, but is also alleged to have induced Patni to terminate Ranjan's contract to preclude him from obtaining the very stock options that are governed by the ESOP containing the forum selection clause, it would be unreasonable not to allow iGate to enforce the clause. The trial court correctly ruled that iGate was bound by the forum selection clause.

In light of our conclusion, we need not reach Ranjan's alternative argument that Patni has not shown that Alameda County is an inconvenient forum. As the trial court found, since the forum selection clause is valid, Patni's alternative request to stay the action on forum non conveniens grounds is moot.

### III. DISPOSITION

The order is affirmed.

_____
Rivera, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.